May it please the Court. I think the key issue in this case, with least regard to the issue of the conflict of interest, is, at least to speak in a vernacular, what the Wheat Court was trying, or what the Supreme Court in Wheat v. United States was trying to advise, which is not only must the Court do justice, it must appear to be justice. In a situation here where trial counsel represented one of the co-defendants, that's a situation that there's lots of case law, and it goes back and forth. But when you look at all the facts and all the surrounding circumstances that the Court had to have known at the time the Court made the ruling, not only did trial counsel represent the major defendant in this case, who happened to be Appellate's son, he also testified before the grand jury. He also, at one time, said, well, I do have a conflict, but I want to see what the government's evidence is of my problem, or what they think the problem is. After hearing the evidence, then they decide, well, I don't have a conflict anymore. You have the government saying that there is a conflict, and the government waives the conflict, or decides that the conflict is no longer there, or that their position is that the conflict is no longer there. All of that, Appellant is listening to and understands as he's going through it. One of the things that I didn't brief, that I actually, it just dawned on me as I was reading it last night, there is no way that trial counsel could have told Appellant what it is that he discussed at the grand jury, because that would have been a violation of the law. So... Well, why is it a violation of the law? Well, he can't testify, or he can't tell someone else what he did when he was in front of the grand jury. That would be... I don't think there's any law like that. Can you cite to me the rule or the statute or case that says that? Well, I thought that Rule 6 covers that, Your Honor. If you testify before the grand jury, you're not to talk about what it is that you discussed there. I never understood that. I could be wrong, and I apologize to the Court if I am. But you have to show, don't you have to show an actual conflict? Yes. What is the actual conflict? The actual conflict is the trial, well, is that trial counsel in this case not only represented a co-defendant in the matter, but trial counsel was actually in many ways representing himself during this trial, at least during the hearings. Not during the trial itself, but during the hearings leading up to the trial. The trial counsel is attempting to distance himself or determine what evidence the government has against him. And in the May 19th and the May 2nd hearings, that's obvious. He talks about that. He wants to know who the witness is. Who is the witness that says that I actually bought dope from John Ward? Once he determines that the witness is Anastasia Bourne, his answer is, well, I don't even know her. I wouldn't know her if I saw her. I don't have a conflict anymore. I think any defendant has the right to have not just conflict-free attorney, because that's obvious. But when you come in, if your lawyer is not representing himself during your trial, he is representing you and only you in this case. His interests aren't a co-defendant. His interests isn't what's going to happen to him tomorrow. And his interests are definitely not what's going to happen to him if this investigation goes sour. Wasn't this all explained to him, though? It would be disingenuous for me to take the position that it wasn't, because the Court asked an awful lot of questions that were submitted by government. However, even that creates a problem, or at least creates a conflict of interest. But his response is, I think this is just all part of the government's scheme to deny me my lawyer. The interesting thing is, that's exactly what his attorney said. So, yes, it was explained to him. Yes, he had had private counsel. He at least counseled him at one time during the case. But given the type of conflicts and the type of things that arose in this case, which I think are totally different than... You're basically saying, under no circumstance, given the posture and the class of this attorney's involvement, was it waivable? It's a per se, non-waivable conflict. I would hate to draw such fine lines like that. In this case, under these facts, what the Court knew at the time, I think the Court should not have allowed trial counsel to try the case. Well, I mean, what's the principle? Just because we don't feel good about this one? No. Well, I think you could almost draw a fine line. If the defense attorney is the subject of the investigation or a target of the investigation that his client is ultimately going to be tried on, he probably shouldn't try the case. I think that's probably a fine line. Is there law for that proposition? No, Your Honor, but there are canons of ethics. I guess that maybe that isn't. I'm sorry? I think there may be cases just even in those circumstances, it isn't non-waivable. It appears that almost anything is waivable. I thought the district judge in this case was pretty careful about covering it six ways to Sunday. I recognize that. I recognize he went through a rather lengthy question and answer session with my client. The totality of the circumstances in this case just, it cries out conflict. And the attorney felt that it was a conflict. There's no doubt that on the face there was a conflict. I don't have any problem in my mind saying that there was a potential conflict. The question is, having identified it, does that mean he's automatically off the case and the defendant can't decide he wants to stick with the guy he knows rather than take somebody new? He was also counseled, as you acknowledge, by somebody else too, wasn't he? That's correct. So it's not an uncounseled waiver. Given his mindset and the mindset of the attorney, these responses that they made to the court when dealing with that issue, it may have been uncounseled. It may not have been uncounseled, but they were of the same mind. It wasn't an independently voluntary decision. That would be my position. Even though he had independent counsel looking over his shoulder. Unfortunately, the record does not reveal what the independent counsel was, other than he said he had one. Even in light of that, it was a rather extensive file, a very large case. I don't know to the extent, and we didn't deal with CJA counsel. It was actually a, I think it was another attorney that the two of them knew or that Mr. Wright, his trial attorney, knew. But... Would you agree that had the district court thrown the lawyer off the case, you could argue just as adroitly now that the district court erred in doing so? Yes, Your Honor. I spent the night realizing that I was going to have to deal with that issue. It was an options choice, there's no question about it. The difference is, I think that had the district court articulated the issues that were before him at the time, Mr. Wright, you testified before the grand jury. Whether you denied or whatever you did, you testified on this particular case, presumably, at least based upon what was going on in the 20th, on whether or not you yourself had bought drugs from the main defendant in this case. You have already told me that you don't want to be the attorney on this case and that you should conflict off. Now, because of something, you've decided you no longer feel that way. As a trial judge, and I am maybe wishing in my mind that that's something I would decide, but as a trial judge, it would seem to me you would be well within your discretion to say no, you can't represent this man. You just can't do it. You are way too involved in this case. If it's that close a question, it sounds like it's a classic case of the district court has to exercise some informed discretion and did. Yes. He has discretion and he did exercise discretion. He meted that discretion out with a plethora of questions. I just feel in this particular case with these facts, given the amount of conflict that was going back between the two of them, or actually the intertwining of the lawyer-client relationship, it would just seem to me very difficult for the court or actually just flat wrong for the court to have allowed him to stay. All right. You know, you have another issue. You want to argue that or you want to just reserve your time for rebuttal? I'll reserve my time for rebuttal. Okay. Thank you. Thank you, Mr. Reed. Let's hear from the government. Good morning, Your Honor. Sean Early on behalf of the United States. May it please the Court, this is a case where Appellant Stephen Ward repeatedly, knowingly, intelligently, and voluntarily waived the conflict of which he now complains. And why don't I focus in on the issue of whether this is an unwaivable conflict. I'll leave aside whether, assuming it was waivable, it was properly waived. I think the district court went through an incredibly detailed and multi-day waiver to make sure it was properly waived. On the issue of whether the conflict is an unwaivable conflict, this Court hasn't set forth the parameters of what types of conflicts will be unwaivable. It has, relying on a Second Circuit case, noted that it would have to be so egregious that no rational defendant, knowing of the conflict, would proceed with that attorney. And in this case, looking at the individual areas where the conflict is claimed, it's not as severe as the types of conflicts which courts have found to be properly waivable. The first one on the issue of the drug purchases by the attorney from a co-defendant. This is not a case where the attorney was alleged to be a member of the narcotics conspiracy or where that particular drug purchase was going to come up at trial. In fact, the government made clear to the district court that it would not be offering evidence of any such drug purchases, and no such drug purchases were offered into evidence, and the attorney's name never came up at all during the trial as being in any way involved other than as an attorney. Secondly, it's important to focus on the procedural nature of where these defendants were. The lead defendant was charged in a narcotics conspiracy, a massive, wide-scale, 100-kilogram quantity, 1,000 pounds of methamphetamine quantity narcotics conspiracy. Simple by personal use quantity sales was not likely to come up during trial and didn't come up during trial. Defendant Stephen Ward was charged with money laundering. Two separate things. There's no reason to think that the attorney, even assuming that he did in fact purchase drugs from John Ward, would have any problem representing Stephen Ward in connection with the money laundering aspect of the case. And in fact, the tact he took and the tact taken by the other co-defendant, Stephen Ward's wife, Frances Ward, who was in essentially the identical position as Stephen Ward, both those attorneys for those two defendants took the same tact. And that is they did not challenge the fact that their son, John Ward, was a drug dealer. They essentially conceded that fact. Their focus was on whether they knowingly laundered money, knowing that it was the proceeds of drug dealing. And to the extent Stephen Ward's attorney ever purchased drugs from John Ward, that would have no impact on his ability to put forth that defense. And his decision to make that defense is justified by looking no further than the fact that an attorney in essentially the same position with no conflict made the same tactical choice. With respect to the attorney's prior representation of John Ward, there are actually two different areas where he represented him. One was in a civil case that had nothing to do with this criminal case. And I think that that properly could, and this Court and the Supreme Court has held such prior representation, can be properly waived. The second one was in connection with a narcotics prosecution of John Ward in the state of Idaho about four or five years earlier. And his time on that case was very brief. That particular conduct was not charged in this case, although it was offered as 404B evidence in this case. And again, this Court's case law and the Supreme Court's case law is successive representation is something that can be waivable. This is not a concurrent representation situation. And even concurrent representation in the appropriate case can be waived. So on the issue of whether this is a waivable conflict, looking at the actual conflicts themselves, these were waivable. They were not so egregious that no rational defendant couldn't decide to go forward with this attorney. And the district courts detailed colloquially with the defendant where the defendant confirmed that he had an attorney. He did identify the attorney by the name of Harlan Burge and confirmed that he had spoken both with Mr. Wright outside the presence of the courtroom. He had read the government's filing about the prosecute, about the conflict three or four times, and had consulted with an independent attorney. It was waivable. It was waived. And even if it was found to be not waivable, in order to reverse the conviction, the Court would have to find some adverse effect that the conflict had on the attorney. There's no evidence of any adverse effect. And, again, I point the Court no further than the co-defendant's attorney, who took essentially exactly the same tact at every step of the way as Mr. Wright did in not challenging the fact that John Ward was a drug dealer, but focusing instead on whether his parents knew he was a drug dealer and knowingly laundered the proceeds of narcotics trafficking. With respect to the other issue raised in the brief regarding the jury instructions, I think the government's handled that. I think it may have been an error in the brief to challenge, not an error, it was a mistake by the defense to challenge that one, that the defendant was not charged with promotion money laundering. He was charged with concealment money laundering. So it would have, in fact, been an error to instruct the jury on promotion money laundering. Coming back to the circumstance of conflict, the one piece of this that does trouble me is that to the extent you have an attorney who's accused of being party to the very criminal enterprise, I'm just trying to think how that gets flushed out so that the defendant can make, even with independent counsel, can make an informed decision. Assuming the attorney was, I'm not saying it was here, but assuming an attorney was and therefore has his own interest to protect, how is the defendant and his independent counsel supposed to be able to find out or assess whether that's a credible denial on the part of the defense counsel so you can make the informed decision? If this guy is a good con man, for example, in my hypothetical, and he basically convinces the defendant that there's nothing to this, and then he proceeds through the trial, it puts an enormous burden then on the defendant to later come along and say, well, as you have just argued, well, the reason he didn't thoroughly cross-examine here is strategic. That's sort of an awkward position and somewhat leads to the notion that maybe there should be a bright-line test. Well, and that's a very good question. And you can't trust the attorney in a situation like that, in every situation, to truthfully put forward all the facts. That's where what is required and what the proper course is and what the district court judge did was, A, refer to an independent attorney. An independent attorney presumably could have and did say, hey, outside of the presence of Tom Wright, you don't know what this attorney did. The government claims it has information about drug purchases. There could be more. Do you understand that there could be more? And he might try to protect himself rather than protect you, knowing that possibility. Do you still want to go forward with him? That's what we counted. That's why the independent reference to an independent attorney was so important. And Judge Taylor below made that express question to the defendant. There's been this allegation. I don't know if it's true. Nobody knows if it's true. Nobody knows if there's more to it than that. You have to recognize, Mr. Ward, that your attorney could go out and seek to protect his interests above yours. We don't know whether that's going to happen. But knowing that that possibility is there, do you still wish to proceed with that attorney? And that's all a judge can do. Now, this is a very different case than let's say an attorney is indicted in a complaint as a kingpin of a drug conspiracy. And there's a lower-level player who could conceivably cooperate against him, and he's going to go to trial and represent himself and that lower-level player where his jeopardy is at stake in that very trial. And by representing this person, he may be preventing that person from doing what's in his best interest, and that is to cooperate against him. It's rather extreme, but we're somewhat short of that. The question is whether you say that's all a judge can do, and that's ultimately my point. That's all a judge can do in terms of questioning. I mean, if that's not sufficient, then the argument would be just don't take the risk. The whole purpose of the judge's discretion is to protect the integrity of the process. Right. And that's the other thing the judge can do, which is say, I can't find out for sure. And when there's doubt and it goes to the heart of the Sixth Amendment representation, you should resolve doubts in favor of not allowing it to go to court. But as Judge Nelson points out, then the defendant will be arguing he's been stripped of his counsel. Right. And the Supreme Court in Weed actually said the presumption should be that a defendant gets to keep his counsel. And in Weed, I think Weed is very instructive. There you had an attorney representing, trying to represent three people, each cooperating against each other in different trials. And two days before trial, when the third defendant tried to retain that attorney, the Supreme Court or the district court said no. And the Supreme Court said yes, that was an appropriate exercise of the district court's wide discretion. But it also said if another district court had made the opposite, come to the opposite conclusion, that would not necessarily be wrong either. So. All right. Thank you. Okay. Thank you. Rebuttal. Actually, on the issue of the allegation of the attorney being involved in the purchase of drugs, there is someone that knows, the attorney. The attorney knows whether or not he did it. Well, that's right. He does. So that attorney. The independent counsel was not a counsel that the court appointed. We have to assume that the attorney, who's the target of the conflict, not target of whatever he may be, he can't take his word for it. The question is whether there is enough protection in what went on here. The independent lawyer and the colloquy with the judge is enough to put it to the defendant that he is taking a known risk and that he can't necessarily rely on his counsel to be truthful. The forecourt is in a document. The court constantly tells him that he's taking a known risk and that you really shouldn't do this. And he still goes forward. But the answer, his answer in response to the court's questions are exactly the same answer that the attorneys were, which is they are both of the mind that it's some conspiracy put forth by the government. When that is the issue and when that is what you're thinking about, when that's what both parties are saying, I think the court should look to that. It's different if he says, you know, he's assured me that this isn't true and the independent attorney tells me it's not true and I want to go forward. But when you take the position that this is just something that the government is putting together, much like the case they're putting together against my son, this is just part of what they're doing. To take the position that because the other attorney or the attorney for the mom later on also took the same tactical position of not cross-examining those witnesses, you can't assume that that was a, that that means it was a good idea. The interesting thing is the witness that wasn't cross-examined is the very witness that was the person that had the evidence come forward, that was the one he was worried about. Anastasia Boren was the one who says, or at least I think the government's statement is that she is the one who says that she saw him purchasing drugs from John Ward. When she comes to the witness stand, there are no questions asked of her. Now, the fact that someone else, that the other attorney didn't ask her questions of her, that's interesting, but I don't think it's compelling, nor is it disclosing anything in this case. Judge Taylor did what I think, he did a journeyman's job as far as getting, asking all the questions. I think in this particular case, given the amount of information, the judge would have been better, the system would have been better served, and obviously my client would have been better served by telling me he can't have this lawyer. And I think the judge, I think had he been, had another lawyer, myself or someone else, been here right now saying he should have had the attorney of his choice, I think given the facts of this case, it is easily to substantiate that he shouldn't. And in that particular case, you have an attorney that's involved in the investigation, who is at least concerned tangentially with what's being charged here. Thank you very much, Ron. All right. Thank you. Thank both counsel. This case is submitted for decision. Next case on the argument calendar is United States v. Curtin.
judges: Tg Nelson, Tashima, Fisher